UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KENNY W. BONDS, JR., Plaintiff | CIVIL DOCKET NO. 1:20-CV-00293 |
| VERSUS | JUDGE DRELL |
| W.S. SANDY MCCAIN, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants. ECF No. 35. Because the sale of smokeless tobacco in the prison commissary did not violate Bonds's constitutional rights, Defendants' Motion to Dismiss (ECF No. 35) should be GRANTED.

I. Background

*Pro se* plaintiff Kenny W. Bonds, Jr. ("Bonds") filed a civil rights complaint, *in forma pauperis,* pursuant to 42 U.S.C. § 1983. The named Defendants are James Longino ("Longino") (an assistant warden employed at Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana), Steven Bordelon ("Bordelon") (a lieutenant colonel employed at RLCC), and W.S. Sandy McCain (former warden of RLCC).

Bonds alleges that, since being incarcerated in the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana, he has been exposed to environmental tobacco smoke ("ETC") from other inmates drying and smoking the smokeless tobacco (dip) that is sold in the prison commissary. Bonds is currently

incarcerated in the RLCC. Bonds seeks monetary damages and injunctive relief. ECF No. 1 at 4.

Defendant W.S. Sandy McCain was dismissed on notice of death, and Warden Myers was substituted by operation of law as a Defendant in his official capacity only.[1] *See* Fed. R. Civ. P. 25(d). ECF Nos. 12, 15.

Bonds' official capacity actions against Longino and Bordelon were dismissed pursuant to Eleventh Amendment immunity. ECF Nos. 11, 31. Only Warden Myers has answered the Complaint. ECF NO. 33. Defendants Myers, Longino, and Bordelon filed a second Motion to Dismiss that Bonds opposes. ECF Nos. 35, 37.

## II. Law and Analysis

Defendants contend Bonds' action should be dismissed for failure to state a claim under § 1983. ECF No. 35.

Bonds complains of exposure to environmental tobacco smoke ("ETS"), or second-hand smoke, since he arrived at RLCC on March 5, 2018, from inmates drying and smoking smokeless tobacco inside RLCC. ECF No. 1 at 3. Bonds argues that exposure to ETS causes him current harm that he did not have prior to being transferred to RLCC (coughing, sneezing, migraine headaches, nausea, runny nose, watery eyes, itchy throat, and shortness of breath), and exposes him to the risk of serious future harm. ECF No. 1 at 5. Bonds seeks monetary damages and injunctive relief (removal of all smokeless tobacco products from the prison).

---

[1] Myers became Warden of RLCC in August 2020.

Bonds alleges that inmates purchase smokeless tobacco ("dip"), dry it in a microwave oven, roll it in pages from a Bible, and smoke it. ECF No. 1 at 6. Bonds contends about 75% of RLCC's inmate population smoke. ECF No. 1 at 7.

A. Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). Courts must presume that general allegations embrace the specific facts that are necessary to support the claim. *See National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). A complaint must be sustained if relief could be granted "under any set of facts that could be proved consistent with the allegations." *See National*

*Organization for Women, Inc.*, 510 U.S. at 256 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

    A.    <u>The Supreme Court's test to determine whether an inmate is entitled to relief for exposure to ETS in prison</u>

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on convicted inmates during imprisonment. The Eighth Amendment encompasses a right to "reasonable safety," including protection against unsafe conditions that pose "an unreasonable risk of serious damage to [the inmate's] future health." *See Helling v. McKinney,* 509 U.S. 25, 33, 35 (1993); *see also Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016). A prison official's duty to protect against such unsafe conditions arises where the inmate has been placed "under a regime that incapacitates [him] to exercise ordinary responsibility for his own welfare." *County of Sacramento v. Lewis,* 523 U.S. 833, 851 (1998); *see also Legate*, 822 F.3d at 210.

In *Helling,* 509 U.S. at 34, the Supreme Court held the Eighth Amendment protects against imminent dangers as well as current unnecessary and wanton infliction of pain and suffering. *See also Legate*, 822 F.3d at 210. Prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to ETS. *See Helling,* 509 U.S. at 33-35.

"To prove an Eighth Amendment claim for unconstitutional prison conditions, an inmate must show that he was exposed to an objective risk of serious harm and that prison officials subjectively acted with deliberate indifference to inmate health

4

or safety." *See Valentine v. Collier*, 141 S. Ct. 57 (U.S. 2020) (citing *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994)).

For the objective component of the burden of proof, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS,[2] but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *See Hicks v. Correctional Corp. of America*, 2009 WL 2969768, at *5 (W.D. La. 2009).

On the subjective component, deliberate indifference is a "state of mind" equivalent to "recklessly disregarding" a known and substantial risk. *See Valentine*, 141 S. Ct. at 60 (citing *Farmer*, 511 U.S. at 835-36). The Supreme Court has defined "deliberate indifference" as "subjective recklessness," or a conscious disregard of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 839. Prison officials thus may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering." *Valentine*, 141 S. Ct. at 60 (citing *Helling,* 509 U.S. at 33).

---

[2] It is well-established that ETS is dangerous. Courts in this district have given judicial notice to the Surgeon General's 2006 report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke," that concludes there is no risk-free level of exposure to ETS. *See Davis v. McCain*, 2018 WL 4936566, at *4 (W.D. La. 2018) (R&R), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018); *Tilmon v. Keith*, 2016 WL 6662470, *1 (W.D. La. 2016); *Samuels v. Terrell*, 2015 WL 4092868, *5 (W.D. La. 2015); *Samuels v. Arnold*, 2014 WL 1340064, *3 (W.D. La. 2014); *Williams v. Johnson*, 2014 WL 2155211, *4 (W.D. La. 2016).

### B. Defendants did not violate Bonds' constitutional rights by selling smokeless tobacco in the commissary.

Bonds argues that Defendants were deliberately indifferent to the risk of serious harm to Bonds' health from second-hand smoke by failing to discontinue selling smokeless tobacco (dip) in the commissary, despite knowing that inmates would abuse it by smoking it.

The sale of smokeless tobacco in the prison commissary does not violate Bonds' constitutional rights. Properly used, smokeless tobacco, or dip, does not emit second-hand smoke. It is the misuse of smokeless tobacco by inmates that causes a current or serious risk of future harm to Bonds.

The Court takes judicial notice of a related case that was recently before it, *Gipson v. LeBlanc,* 1:17-cv-1394 (W.D. La. 2022). In *Gipson*, it was shown that officers at RLCC issued approximately 420 disciplinary reports issued from 2017 through 2019 to inmates for illicit smoking or for possession of dried-out smokeless tobacco. Those inmates either reprimanded or punished with loss of privileges (most often). The reports showed that Defendants were aware of the smoking problem and made conscious, substantial efforts to enforce the smoking ban at RLCC. It was also shown that Warden Myers has made additional substantial efforts to enforce the smoking ban and curb the drying and smoking of dipping tobacco by inmates since he arrived at RLCC in 2020, such as removing misused microwaves from the dorms. Defendants' efforts to stop inmates from smoking dip

6

at RLCC are evidence that they have not been deliberately indifferent to the serious risk of harm to Bonds from second-hand smoke.

Because there is no set of facts consistent with Bonds's allegations under which he could prove that Defendants violated his constitutional rights by selling smokeless tobacco at the prison commissary, Defendants' Motion to Dismiss (ECF No. 33) should be granted and Bonds's action should be dismissed.

I. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 35) be GRANTED and that Bonds's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen

(14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __18th__ day of February, 2022.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge